FILED
06/02/2026
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 19, 2026 Session

# STATE OF TENNESSEE v. JOSHUA DANIEL GIBBONS

**Appeal from the Criminal Court for Sullivan County**
**No. S77097 William Rogers, Judge**

---

**No. E2025-00734-CCA-R3-CD**

---

Defendant, Joshua Daniel Gibbons, appeals his Sullivan County Criminal Court jury conviction of disorderly conduct, arguing that the evidence was insufficient to support his conviction and that the trial court erred in its instructions to the jury. We find that the trial court erred by instructing the jury on a mode of disorderly conduct not included in the charging instrument and that, in any event, the evidence was insufficient to support Defendant's conviction under either mode of liability charged to the jury. Accordingly, we reverse the judgment of the trial court and dismiss the charge.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Dismissed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and JILL BARTEE AYERS, J., joined.

Kendall Stivers Jones, Assistant Public Defender - Appellate Division (on appeal); Andrew J. Gibbons, Public Defender; and Timothy Horne, Assistant Public Defender (at trial), for the appellant, Joshua Daniel Gibbons.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Barry P. Staubus, District Attorney General; and Andrea Black and Alex Griffith, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

Defendant's conviction in this case arose from a video recording that he took of himself having an interaction with Kingsport Police Department ("KPD") Sergeant Craig Dunsworth on October 9, 2022.


Case 2:23-cv-00138-TAV-CRW Document 39-2 Filed 08/19/26 Page 1 of 13
PageID #: 159

## Factual and Procedural Background

In an affidavit of complaint sworn on October 17, 2022, KPD Detective Robert Mills alleged as follows:

> On 10/17/2022 at 14:00 hours, [Detective Mills] was made aware of a video uploaded to YouTube by "Big G Audits[.]" I reviewed the video that depicted events on 10/9/2022 on Stone Dr. and the [Cook Out] restaurant at 1600 E. Stone Dr. The video is produced and uploaded by "Big G Audits" creator Josh Gibbons. In the video, Mr. Gibbons is clearly operating his hand[-]held cellphone while driving and filming. Mr. Gibbons also shows himself traveling 53 MPH in a posted 45 MPH zone on E. Stone Dr. approaching Harrell Rd. Mr. Gibbons then films while he approaches a KPD Officer in the drive-thru and Mr. Gibbons is yelling obscenities at the Officer and disturbing the lawful conduct of the Officer and other patrons that are in the drive-thru. Due to these facts, I am charging Mr. Gibbons with speeding, Prohibited use of a mobile telephone while driving and Disorderly Conduct. This occurred in Kingsport, Sullivan County Tennessee.

An arrest warrant based on the affidavit of complaint was issued that same day, and Defendant was arrested the following day.

On February 23, 2023, Defendant waived his right to have the grand jury determine probable cause and agreed to a bench trial in the Sullivan County General Sessions Court. At the conclusion of that trial, the general sessions court found Defendant guilty of disorderly conduct but not guilty of the remaining offenses. The court sentenced Defendant to thirty days, with ten days to serve. That same day, Defendant appealed his conviction to the Sullivan County Criminal Court for a trial de novo. *See* Tenn. Code Ann. § 27-5-108(a), (c).

On August 17, 2023, Defendant moved the trial court to dismiss the single remaining charge on grounds that the undisputed material facts could not support a conviction of that offense. No order disposing of Defendant's motion appears in the record, but the case proceeded to a jury trial on September 2, 2025.

Sergeant Dunsworth testified that on October 9, 2022, he was "headed to a crash" to "audit" the activity of other officers "in a supervisory capacity." He said that he was "off the radio so to speak, so that they wouldn't anticipate that I was arriving." The sergeant stated that the other officers had cleared the vehicles from the intersection "and were elsewhere completing their reports" by the time he arrived, so he decided to get something to eat. The sergeant went to the Cook Out restaurant and pulled his marked police vehicle into the outermost drive-through lane. He said that he was in the drive-through for no more than seven minutes before he was able to get his food and leave. Before ordering his food, the sergeant was approached by an individual on foot. The individual, whom the sergeant

knew to be Defendant, approached the driver's side of the cruiser with "his cell phone camera up."

Defendant asked Sergeant Dunsworth for his name and badge number, and the sergeant declined to provide that information because KPD policy was that officers "don't have to provide name and badge number to somebody who just asks, arbitrarily." The sergeant recalled that Defendant "mentioned something about that he thought that I was speeding," walked around the patrol car, and asked for the car number. The sergeant told Defendant that that the car number was on the back of the vehicle, and Defendant stated that he intended to file a complaint based on the sergeant's speeding.

Sergeant Dunsworth said that he did not "say a whole lot to him beyond that" and that Defendant "got a little bit loud" and was "expressing his frustrations." He recalled that Defendant "began getting extremely loud" as he walked away from the patrol vehicle and that he stopped at the corner of the building "and called me a piece of s***." Defendant then walked off, and the sergeant continued through the drive-through. Once he had obtained his food, the sergeant phoned his lieutenant to report that a complaint might be forthcoming. He said that, to his knowledge, no complaint was lodged.

During cross-examination, Sergeant Dunsworth agreed that his interaction with Defendant lasted for one minute and ten seconds. He admitted that he was able to get through the drive-through unimpeded by Defendant and that his encounter with Defendant ended before he arrived at the screen to order. He said that a car was in front of him blocking his access to the drive-through window during the encounter and that the people in the car in front of him paid for his food. The sergeant admitted that although no formal complaint was filed, the video that led to Defendant's being charged was provided to the police department along with an allegation that the sergeant was "operating [a] vehicle in violation of state law and city policy." He agreed that neither he nor any other officer filed charges against Defendant until the video was provided to the KPD.

Sergeant Dunsworth conceded that Defendant did not threaten him or engage in any threatening behavior, did not refuse to obey a lawful order, and did not create a physically offensive condition. He also conceded that no other person was prevented from getting their food and moving on.

An edited version of the video recording of the incident captured by Defendant's cell phone camera was made an exhibit and played for the jury. The video, which is one minute and sixteen seconds in length, shows Defendant cross the inside drive-through lane and approach the open driver's window of the sergeant's vehicle while the sergeant is two cars behind the restaurant's order screen. The following exchange occurred:

| | |
|---|---|
| Defendant: | Is there any way I can ask you a question what your name and badge number is? |

| | |
|---|---|
| Sergeant Dunsworth: | No, sir. |
| Defendant: | No, sir? Okay. There a reason why you feel like you can speed down through here and break the traffic laws? |
| Sergeant Dunsworth: | I wasn't speeding. |
| Defendant: | You weren't speeding? Okay. Well, what's your car number? Okay. Well, I've got you recorded speeding so you're full of s***. |

While making the above statement, Defendant walked past the driver's side window to the back of the vehicle where the car number was displayed. Defendant then walked back to Sergeant Dunsworth's open window and asked, "Are you sure you don't to give me your name, badge number?" The sergeant said, "No, sir. I don't wish to give it out." Defendant responded, "Okay. All right. You'll be getting a formal complaint." Defendant then crossed the inside lane to the corner of the restaurant and yelled toward the sergeant, "I don't know why you feel you're above the law. You have to obey by the traffic laws just like everybody else when you're not running emergency. Why you think you can do 55 mile per hour down Stone Drive, I have no idea. You piece of s***."

During Defendant's last statement on the video, Sergeant Dunsworth pulled his patrol car up to the order screen. In the recording, Defendant never touched the car, the sergeant, or any of the other cars in the drive-through line. There was one car in the inside lane at the order screen approximately two car lengths in front of Defendant as he stood at the corner of the building. It is unclear whether Defendant stood in the inside lane when he yelled at the sergeant.

Natalie Long testified that she and her boyfriend, former Mount Carmel Police Department Detective Hunter Jones,[1] were in line to order at the Cook Out when they heard "yelling and profanity." Ms. Long, a Tennessee Homeland Security officer, said this "piqued" her "interest" because of her law enforcement experience. She turned her head and saw a man approaching a marked patrol car. She described the situation as "odd" and "out of the ordinary." She said she "wasn't sure" about the officer's "safety," but she did not get out of her car. She recalled that the entire interaction lasted less than two minutes and was "[v]ery short." She did not speak to either individual.

During cross-examination, Ms. Long admitted that she could not hear the entire encounter and said that "[i]t was just a quick thing that I didn't even think I would be called

[1] At the time of trial, Hunter Jones was a communications supervisor with the Hawkins County Communications District. We will refer to him by his position at the time of the incident.

for." She said that she was not threatened and that she and her boyfriend were not prevented from getting their food. Her boyfriend paid for Sergeant Dunsworth's meal.

Detective Jones testified that the first thing that caught his attention was someone on foot approaching the drive-through. He heard a man say "something about speeding" before "he got more agitated and started screaming profanities at the officer." Detective Jones watched the encounter in his car mirror but did not get out of his car because the man walked away and "kind of put distance" between the man and the officer. He did not speak to either the KPD officer or the man who confronted him.

During cross-examination, Detective Jones agreed that the interaction was very short and that the only profanity he heard was the man's telling the officer "that he was a piece of s***." He conceded that the interaction did not prevent him from doing anything.

Following this testimony, the State rested. Defendant moved the trial court for judgment of acquittal, noting specifically that none of the State's witnesses had testified that Defendant's actions prevented them from doing anything. The State conceded that the witnesses had so testified but nevertheless asserted that Defendant was guilty of disorderly conduct because the witnesses' "just hearing the encounter, and the actual physical looking in the mirror" diverted their "attention from whatever they were doing." The State appeared to conflate subsections (a)(3) and (b) of Tennessee Code Annotated section 39-17-305 and argued that Defendant's conduct created "a hazard or physically offensive condition" that prevented the witnesses from engaging in lawful activities. The trial court denied Defendant's motion for judgment of acquittal, finding that based on the elements of Code section 39-17-305(b), Defendant had prevented "others from carrying on lawful activities."

Following a full *Momon* colloquy, Defendant elected not to testify and chose to present no proof. In addition to Code section 39-17-305(b), the State asked the trial court to instruct the jury pursuant to Code section 39-17-305(a)(3), which applies when someone "in a public place and with intent to cause public annoyance or alarm . . . [c]reates a hazardous or physically offensive condition by any act that serves no legitimate purpose." *See* Tenn. Code Ann. § 39-17-305(a)(3). The State asked the trial court to provide instructions on the mental states of "intentionally, knowingly, and recklessly" in conjunction with both subsections. Defendant did not lodge a contemporaneous objection to the State's requested instruction.

The jury convicted Defendant as charged, and Defendant moved the trial court to set aside the verdict in its role as thirteenth juror. The trial court declined, stating only, "I think the jury has spoken." In a later-filed written order, the trial court found "that the weight of the evidence supports the verdicts, both as to the defendant's guilt on the various

counts of the presentment and the sentence which the jury imposed."[2] Following a sentencing hearing, the trial court imposed a sentence of 30 days to be served on supervised probation.[3]

Defendant filed a timely but unsuccessful motion for new trial followed by a timely notice of appeal.

## Analysis

In this appeal, Defendant asserts that the evidence was insufficient to support his conviction and that the trial court erred by instructing the jury regarding the elements of disorderly conduct in Code section 39-17-305(a)(3).

### I. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support his conviction under either of the theories offered by the State. The State asserts that the evidence was sufficient. We agree with Defendant.

We review a challenge to the sufficiency of the convicting evidence to determine whether, "after viewing the evidence in the light most favorable to the prosecution" and providing the State with "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom," "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citations omitted); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011) (citations omitted); Tenn. R. App. P. 13. Our review "is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both." *State v. Williams*, 558 S.W.3d 633, 638 (Tenn. 2018) (citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)). Importantly, a guilty verdict removes the presumption of innocence and replaces it with one of guilt on appeal, shifting the burden to the defendant to demonstrate why the evidence is legally insufficient to support the conviction. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

We will not revisit witness credibility or any purported discrepancies in the evidence because the jury, not this court, resolves all questions involving the credibility of the witnesses, the weight and value to be given to evidence, and the factual disputes raised by such evidence. *See Dorantes*, 331 S.W.3d at 379 (citing *State v. Campbell*, 245 S.W.3d

---

[2] Defendant was charged with only a single count of disorderly conduct by arrest warrant rather than by presentment, and the sentence was imposed by the trial court on the same day that the court filed its order.

[3] The judgment form contains a statement in the Special Conditions box that the court had made findings pursuant to Code section 40-35-304 "regarding the ability of the defendant to pay and also setting the amount and timing and payment of restitution." No restitution was ordered.


Case 2:23-cv-00138-TAV-CRW Document 39-2 Filed 08/19/26 Page 6 of 13
PageID #: 164

331, 335 (Tenn. 2008)). Accordingly, this court will neither re-weigh nor reconsider the evidence when evaluating the sufficiency of the convicting proof. *State v. Stephens*, 521 S.W.3d 718, 724 (Tenn. 2017).

Before we begin our assessment of the sufficiency of the evidence, we must necessarily determine the charged offense. As indicated above, this case was charged via arrest warrant. *See* Tenn. Code Ann. § 40-2-104 (stating that "prosecution is commenced" by, among other things, "the issuing of a warrant"). Defendant agreed to be tried on the warrant in the general sessions court, and, accordingly, the affidavit of complaint supporting the warrant became "an indispensable part of the scheme of our Rules whereby [the accused] is notified of the essential facts constituting the offense charged against him." *State v. Scott*, No. C.C.A. 17, 1989 WL 22736, at *4 (Tenn. Ct. App. Mar. 16, 1989). "The constitutional requirement of notice for the accused who is tried upon an arrest warrant is no different than for the accused who is tried by way of indictment." *State v. Coulson*, No. 01C01-9709-CR-00397, 1998 WL 617135, at *3 (Tenn. Crim. App. Sept. 15, 1998).

Because Defendant was acquitted of the charges of speeding and prohibited use of his mobile phone, the case proceeded in the criminal court only on the charge of disorderly conduct. The essential facts of that offense as alleged in the affidavit of complaint provide that Defendant "is yelling obscenities at the Officer and disturbing the lawful conduct of the Officer and other patrons that are in the drive-thru." We examine this language through the lens of the statute proscribing disorderly conduct, which provides:

> (a) A person commits an offense who, in a public place and with intent to cause public annoyance or alarm:
>
> (1) Engages in fighting or in violent or threatening behavior;
>
> (2) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard or other emergency; or
>
> (3) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.
>
> (b) A person also violates this section who makes unreasonable noise that prevents others from carrying on lawful activities.
>
> (c) A violation of this section is a Class C misdemeanor.

Tenn. Code Ann. § 39-17-305.

The arrest warrant's affidavit of complaint does not allege that Defendant acted "with intent to cause public annoyance or alarm," that he engaged "in fighting or in violent or threatening behavior," that he refused to obey any official order, or that he created "a

hazardous or physically offensive condition." Thus, none of the modes of committing the offense as charged in subsection (a) are applicable. This court has observed that subsections "(a) and (b) describe two different types of disorderly conduct" that operate independently from one another. *State v. Harvey*, No. E2008-01081-CCA-R3-CD, 2010 WL 5550655, at *15 (Tenn. Crim. App. Dec. 30, 2010).

Instead, allegations that Defendant was "yelling obscenities" and "disturbing the lawful conduct" of Sergeant Dunsworth and the other witnesses could only fit within subsection (b)'s prohibition on making "unreasonable noise that prevents others from carrying on lawful activities." Accordingly, we will examine the proof adduced at trial to determine whether it was sufficient to support a conviction under this subsection, which required the State to prove "the following elements (1) that the defendant "ma[de] unreasonable noise which (2) prevent[ed] others from carrying on lawful activities." *State v. Moore*, No. 03C01-9904-CR-00133, 1999 WL 1125235, at *2 (Tenn. Crim. App. Dec. 9, 1999) (alterations in original).

The evidence adduced at trial established that the entire encounter between Defendant and Sergeant Dunsworth lasted less than two minutes. Defendant accused the sergeant of speeding and asked for his name and badge number. The sergeant said he was not speeding and declined to give his information; Defendant responded that the sergeant was "full of s***." After the sergeant directed Defendant to the rear of his marked vehicle for the car number, Defendant walked away and yelled from the corner of the building that the sergeant was "a piece of s***." While Defendant cursed twice, this was the only profanity uttered by Defendant. "Mere verbal epithets, unless the epithets can be considered 'fighting words,' cannot by themselves support a conviction under Tennessee's disorderly conduct statute." *State v. Roberts*, 106 S.W.3d 658, 663 (Tenn. Ct. App. 2002) (quoting *State v. Creasy*, 885 S.W.2d 829, 831 (Tenn. Crim. App. 1994)). In *Creasy*, we held that even "profane and insulting" words alone will not rise to the level of a crime, particularly when uttered against the police, who "are trained to exercise a higher degree of restraint than the average citizen." *Creasy*, 885 S.W.2d at 831-32 (affirming conviction for disorderly conduct when defendant, in addition to yelling, "clenched his fist at his side and pointed his finger in the officer's face"); *see also Garvey v. State*, 537 S.W.2d 709, 710 (Tenn. Crim. App. 1975) (reversing conviction for disorderly conduct "when the defendant, driving past the police station, called to the officer, 'sooey'").

Further, our "cases demonstrate that the term 'unreasonable noise' must be read in conjunction with the remainder of the section to determine what conduct it proscribes: an unreasonable noise must be one sufficient to prevent others from carrying on lawful activities." *Harvey*, 2010 WL 5550655, at *16-17 (affirming conviction for disorderly conduct when defendant's "blaring loud, 'pornographic' music from his back porch in the middle of the night" prevented neighbors from sleeping); *see also, e.g.*, *State v. Throneberry*, No. M2008-00464-CCA-R3-CD, 2009 WL 103630, at *3-4 (Tenn. Crim. App. Jan. 12, 2009) (reversing disorderly conduct conviction when "encounter between the

officer and the defendant, though to some degree contentious, was brief, and the defendant attempted to comply with the officer's request to get in his truck and leave"); *State v. Cook*, No. M1999-00174-CCA-R3-CD, 2000 WL 127285, at *2 (Tenn. Crim. App. Feb. 4, 2000) (affirming conviction for disorderly conduct when defendant sat on the floor kicking and screaming so loudly that "[e]mergency room business was disrupted").

In this case, no evidence established that Defendant's yelling *prevented* any person from doing any lawful activity. Defendant did not impede progress in the drive-through. All three witnesses for the State testified that the brief encounter did not prevent them from placing their orders, getting their food, and moving on with their plans. Sergeant Dunsworth was in the drive-through line for a total of seven minutes. None of the witnesses, all with law enforcement backgrounds, even got out of their cars. *See State v. Wilson*, 990 S.W.2d 726, 729 (Tenn. Crim. App. 1998) (reversing conviction for disorderly conduct when evidence established "that the defendant made 'unreasonable noise'" but no proof established "that others heard the noise *and were prevented from carrying on lawful activities*") (emphasis added); *see also State v. Tidwell*, No. 01C01-9610-CR-00445, 1998 WL 92155, at *5 (Tenn. Ct. App. Mar. 4, 1998) (affirming conviction under Code section 39-17-305(b) when "Defendant's course of conduct, which consisted of yelling, cursing and threatening [an animal control officer], resulted in his failure to engage in his assigned duty to procure the stray dogs"). The prosecutor's argument to the trial court that a person's momentary distraction is enough to sustain the charge is incorrect. *See Wilson*, 990 S.W.2d at 729 (stating that "testimony that others 'could have' heard the defendant does not establish that others did, in fact, hear the noise and were, in fact, prevented from carrying on legal activities"). Because the evidence adduced at trial did not establish that Defendant made "unreasonable noise," as defined by the statute and case law, or that his conduct prevented any person from engaging in lawful activities, we reverse Defendant's conviction and dismiss the charge.

Moreover, even if we could agree that the affidavit of complaint charged Defendant with violating Code section 39-17-305(a)(3), the evidence was insufficient to support his conviction because no evidence established that Defendant acted "with intent to cause public annoyance or alarm" or that he "create[d] a hazardous or physically offensive condition" through conduct "that serve[d] no legitimate purpose." Tenn. Code Ann. § 39-17-305(a)(3). "'Public annoyance or alarm' in the disorderly conduct statute refers to the intent of a person engaged in violent, threatening or hazardous behavior" such that "[m]ore than words alone are required to support a conviction for disorderly conduct unless it can be established that the words, given the particular situation, are sufficient to provoke a violent reaction." Tenn. Op. Atty. Gen. No. 99-201 (Oct. 6, 1999). This court has defined "physically offensive" as "'unpleasant or disagreeable to the senses; obnoxious' or 'causing displeasure, anger, or resentment; esp., repugnant to the prevailing sense of what is decent or moral.'" *State v. Patterson*, No. M2024-01608-CCA-R3-CD, 2026 WL 685072, at *6 (Tenn. Crim. App. Mar. 11, 2026) (quoting *Black's Law Dictionary* (12th ed. 2024)), *no perm. app. filed*. A "hazardous" condition is one that is "'risky' or 'dangerous.'" *State v.*

*Webber*, No. M2014-02527-CCA-R3-CD, 2015 WL 6774014, at *4 (Tenn. Crim. App. Nov. 6, 2015) (reversing conviction when "the record [was] [de]void of any evidence regarding what hazard was created when the defendant refused to exit the vehicle"). As noted above, when "the words [a]re insults only" and not accompanied by violent or threatening behavior, there has been no offense. *Scott*, 1989 WL 22736, at *3 (holding that defendant's calling sheriff "a fat son of a b****" did not meet common law definition of breach of the peace and reversing conviction); *see also Roberts*, 106 S.W.3d at 663 ("[I]nsulting or obscene words . . . do not rise to the level of 'fighting words'"). Indeed, even "[b]elligerent actions do not rise to the level of violent or threatening" and cannot support a conviction for disorderly conduct without more. *State v. Millsaps*, No. 03C01-9409-CR-00313, 1996 WL 397445, at *2 (Tenn. Crim. App. July 17, 1996) (reversing conviction when officers described defendant's conduct as "cussing, hollering and very belligerent" but "[t]he only possible threatening act was the throwing of appellant's car keys at (or to) the officer"). In *Patterson*, we affirmed the defendant's conviction of disorderly conduct under subsection (a)(3) when the defendant walked into a post office and began filming himself shouting at employees about the absence of a poster. *See Patterson*, 2026 WL 685072, at *6. We observed that the defendant "continued to film with his phone after being asked multiple times by postal employees to stop" and that his conduct "impeded not only the employees of the post office from doing their jobs, but impeded members of the public from accessing the post office" because postal employees were forced "to lock the doors of the customer service area after Defendant argued with employees and filmed customers who were attempting to conduct business after being asked repeatedly to stop." *Id.* Contrast *Patterson* with the brief encounter here, during which Defendant did not threaten anyone, did not engage in any violent behavior, and did not create a physically offensive or hazardous condition.

## II. Jury Instructions

Defendant also asserts that the trial court committed plain error by instructing the jury on the elements of disorderly conduct contained in Code section 39-17-305(a)(3) when the affidavit of complaint did not charge an offense under that subsection. The State asserts that the trial court did not err.

"It is well-settled that a defendant has a constitutional right to a complete and correct charge of the law, so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *Dorantes*, 331 S.W.3d at 390. Thus, "[t]he trial court has the duty to provide a complete charge of the law applicable to the facts of a case." *State v. James*, 315 S.W.3d 440, 446 (Tenn. 2010). When reviewing the adequacy of a particular jury instruction, this court must review the instruction in the context of the whole charge rather than in isolation. *State v. Clark*, 452 S.W.3d 268, 295 (Tenn. 2014). "Whether jury instructions are sufficient is a question of law appellate courts review de novo with no presumption of correctness." *Id.* at 295 (first citing *State v. Hawkins*, 406 S.W.3d 121, 128 (Tenn. 2013); and then *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 699 (Tenn. 2011)).


Case 2:23-cv-00138-TAV-CRW Document 39-2 Filed 08/19/26 Page 10 of 13
PageID #: 168

In his initial brief, Defendant asserted that by instructing the jury pursuant to subsection (a)(3), the trial court improperly amended the charging instrument without following the requirements of Tennessee Rule of Criminal Procedure 7. The State argued that, according to its plain language, Rule 7 applies only to an indictment, presentment, or information. We agree that Rule 7 is so limited. *See generally* Tenn. R. Crim. P. 7. However, a constructive amendment of the charging instrument arises "when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged." *State v. Goodson*, 77 S.W.3d 240, 244 (Tenn. Crim. App. 2001).[4] When a constructive amendment occurs, reversal is said to be "automatic, because the defendant may have been convicted on a ground not charged in the indictment." *Id.* The logic is that a constructive amendment of the charging instrument, not consented to by the defendant, does not accomplish the "overriding purpose of notice to the accused" and, accordingly, violates principles of due process. *See State v. Hammonds*, 30 S.W.3d 294, 300 (Tenn. 2000).

As to the charged offense of disorderly conduct, the trial court instructed the jury as follows:

> Any person who commits the offense of Disorderly Conduct is guilty of a crime. For you to find the defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements: A1- that the defendant was in a public place and with an intent to cause public alarm or public annoyance, 2- that the defendant created a hazardous or physically offensive condition by an act that served no legitimate purpose, and 3- that the defendant acted either intentionally, knowingly or recklessly, or B1- that the defendant made some unreasonable noise which prevented others from carrying out lawful activities. And 2- that the defendant acted either intentionally, knowingly, or recklessly.

As we have already explained, the charging instrument in this case charged Defendant with disorderly conduct via subsection (b) of the statute. Accordingly, the trial court should not have instructed the jury on the elements of disorderly conduct contained in subsection (a) because the two subsections "are separate, distinct crimes." *Harvey*, 2010 WL 5550655, at *17. By alleging a specific mode of liability, the State was precluded from achieving a conviction under a different mode of liability than that alleged in the charging instrument. *See Goodson*, 77 S.W.3d at 244 ("Put simply, not only must the government prove the crime it charges, it must charge the crime it proves."); *see also, e.g.*, *State v. Richardson*, No. W2008-02506-CCA-R3-CD, 2010 WL 3791973, *11 (Tenn. Crim. App. Sept. 29, 2010) (reversal required when the trial court instructed the jury on aggravated assault by intentionally and knowingly causing another to reasonably fear imminent

---

[4] At oral argument, Defendant conceded conflating the separate but related concepts of variance and constructive amendment.

bodily injury but the indictment charged the defendant with aggravated assault by knowingly causing bodily injury to another); *State v. Roskom*, No. M2006-00764-CCA-R3-CD, 2007 WL 432989, *3 (Tenn. Crim. App. Feb. 9, 2007) (reversal required when indictment alleged failure to timely register but proof showed the defendant's failure to report to local law enforcement agency within a week of his birthday); *State v. Najjar*, No. W2003-00329-CCA-R3-CD, 2004 WL 123213, *5-6 (Tenn. Crim. App. Jan. 21, 2004) (reversal required when jury instruction allowed conviction based upon a theory of aggravated rape not alleged in the indictment). The trial court's instructing the jury on disorderly conduct via subsection (a)(3) permitted the jury to convict Defendant on a mode of liability not included in the charging instrument, resulting in a constructive amendment.

Defendant asserts that the court's error was plain and entitles him to relief despite that he failed to object to the jury instructions. The State asserts that it does not. As indicated, when a constructive amendment occurs, "reversal is automatic," begging the question whether a defendant can waive a constructive amendment to which he has not actively consented. *Goodson*, 77 S.W.3d at 244 (citation omitted). Regardless of whether reversal is automatic or whether we review for plain error, however, Defendant is entitled to relief.

> Relief under the plain error doctrine is available when
>
> (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the issue was not waived for tactical reasons; and (5) consideration of the error is necessary to do substantial justice.

*State v. Linville*, 647 S.W.3d 344, 353-54 (Tenn. 2022) (quoting *State v. Vance*, 596 S.W.3d 229, 254 (Tenn. 2020)). Here, the record clearly establishes that, at the State's request, the trial court instructed the jury under the terms of subsection (a)(3) and, in doing so, breached a clear and unequivocal rule of law. The trial court's error allowed the jury to convict Defendant on a ground not included in the charging instrument, thereby adversely affecting Defendant's constitutional rights to due process and trial by jury. *See Goodson*, 77 S.W.3d at 244; *Hammonds*, 30 S.W.3d at 300. The record is devoid of any indication that Defendant waived the issue for tactical reasons. Finally, as explained above, because the evidence was insufficient to support a conviction for disorderly conduct under either mode of liability charged to the jury, consideration of the issue is necessary to do substantial justice.


Case 2:23-cv-00138-TAV-CRW Document 39-2 Filed 08/19/26 Page 12 of 13 PageID #: 170

## Conclusion

Because the evidence was insufficient to support a conviction of disorderly conduct, we reverse the judgment of the trial court and dismiss the case.

s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE